[No. 19239-0-II.   Division Two.   October 11, 1996.]

PIERCE COUNTY HOUSING AUTHORITY, *Respondent,* v. MURREY'S DISPOSAL COMPANY, INC., ET AL., *Appellants.*

*Polly L. McNeill, Andrew M. Kenefick,* and *Heller Ehrman White & McAuliffe,* for appellants.

*Thomas F. Ahearne, Grover E. Cleveland,* and *Foster Pepper & Shefelman,* for respondent.

BRIDGEWATER, J. — Murrey's Disposal Company, Inc., along with other private garbage collection companies (Haulers), appeal a grant of partial summary judgment and declaratory judgment allowing the Pierce County Housing Authority (PCHA) to haul and collect solid waste from its own buildings without obtaining a certificate from the Washington Utilities and Transportation Commission (WUTC). Because one of the express purposes in creating Housing Authorities is to provide sanitary dwellings for persons of low incomes, we hold that the authority to manage and operate housing projects includes the authority to collect and haul garbage from its own housing facilities. Additionally, we hold that the PCHA is not subject to WUTC supervision because the PCHA is not primarily in the business of transporting solid waste. We affirm.

The PCHA is one of the public housing authorities established in RCW 35.82 for the purpose of "mak[ing] safe and sanitary housing available to low income persons."[1] A housing authority is prohibited from operating for profit and must fix the rentals at the "lowest possible

---

[1] *See* RCW 35.82.010; *King County Fire Protection Dist. No. 16 v. Housing Auth. of King County,* 123 Wn.2d 819, 822, 872 P.2d 516 (1994) (citing *Housing Auth. of City of Seattle v. City of Seattle,* 56 Wn.2d 10, 13, 351 P.2d 117 (1960)).

rates consistent with its providing decent, safe and sanitary dwelling accommodations."[2]

Each year, the PCHA pays over $300,000 to private garbage companies. It ran a feasibility study, which concluded that, by using its own employees, dumpsters, and garbage trucks, the PCHA could collect and haul the garbage from its own facilities for 40 percent or $120,000 less than the amount charged by the private garbage companies. But the PCHA's preparation for a self-hauling operation caught the attention of the Haulers, who then told the PCHA that it was subject to the "Solid Waste Collection Companies" statute, RCW 81.77. That statute is enforced by the WUTC and requires that all solid waste collection companies be certified by the WUTC. Under the Haulers's threat to sue, PCHA filed a Complaint for Declaratory Judgment against the WUTC and the Haulers to establish its authority to service its own housing units free of WUTC regulation. The trial court granted PCHA's partial summary judgment.

■ The issue is whether the trial court's grant of summary judgment was based upon a correct interpretation of the relevant statutes. In reviewing an order of summary judgment, the appellate court engages in the same inquiry as the trial court.[3] Summary judgment should be granted only if, given all of the evidence, reasonable persons could reach but one conclusion.[4] And, because the question concerns the proper construction of statutes, we review the trial court's conclusion de novo.[5]

■ Our primary objective in interpreting a statute is to ascertain and give effect to the Legislature's intent as

---

[2]RCW 35.82.080.

[3]*King County Fire Protection Dist.*, 123 Wn. 2d at 825 (citing *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982)).

[4]*Scott ex rel. Scott v. Pacific W. Mountain Resort*, 119 Wn.2d 484, 502-03, 834 P.2d 6 (1992) (citing *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990)) (additional citation omitted).

[5]*King County Fire Protection Dist.*, 123 Wn.2d at 825.

manifested in the statute's express language.[6] Legislative intent is derived from the statutory context as a whole.[7] "Absent ambiguity or a statutory definition, words in a statute should be given their plain and ordinary meaning."[8] "[E]very word, clause, and sentence of a statute [should] be given effect, if possible."[9]

## A. Authority

Our analysis of the Housing Authority statute begins with RCW 35.82.010, which explains why housing authorities were created. Throughout that statute, the Legislature expresses its concern with a shortage of, and a need to provide, sanitary dwelling accommodations for low income persons. Thus, it mandated that "each housing authority shall manage and operate its housing projects in an efficient manner so as to enable it to fix the rentals for low-income dwelling accommodations at the lowest possible rates consistent with its providing decent, safe and sanitary dwelling accommodations."[10]

██ ██ In order to assure that housing authorities can achieve this purpose, the Legislature grants to housing authorities "all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this chapter."[11] It also expressly authorizes housing authorities to "operate housing projects," which are defined in RCW 35.82.020(9) as including "any work or

[6]*Palmer v. Department of Revenue,* 82 Wn. App. 367, 372, 917 P.2d 1120 (1996) (citing *Martin v. Meier,* 111 Wn.2d 471, 479, 760 P.2d 925 (1988)).

[7]*Hartman v. Washington State Game Comm'n,* 85 Wn.2d 176, 179, 532 P.2d 614 (1975) (citing *Amburn v. Daly,* 81 Wn.2d 241, 501 P.2d 178 (1972)).

[8]*Palmer,* 82 Wn. App. at 372 (citing *Garrison v. Washington State Nursing Bd.,* 87 Wn.2d 195, 196, 550 P.2d 7 (1976)).

[9]*Klein v. Pyrodyne Corp.,* 117 Wn.2d 1, 13, 810 P.2d 917 (1991).

[10]RCW 35.82.080.

[11]RCW 35.82.070.

undertaking . . . to provide decent, safe and sanitary . . . living accommodations."[12]

While holding this broad grant of power, the PCHA, being a municipal corporation, "is limited in its powers to those necessarily or fairly implied in or incident to the powers expressly granted, and also those essential to the declared objects and purposes of the corporation."[13] Those purposes are to provide sanitary and low-cost accommodations. One of the central problems in providing sanitary conditions is garbage collection and removal. Thus, a plain reading of the statutes leads to only one conclusion — that Housing Authorities have the authority to collect and haul solid waste from their projects. Further, the efforts made by the PCHA in its feasibility study and in its attempt to service its own projects are not only consistent with the requirement in RCW 35.82.080 to provide "sanitary dwelling accommodations," but essential, especially if the PCHA is to provide the lowest possible rates. The trial court did not err in granting summary judgment in favor of the PCHA.

### B. Solid Waste Collection Company

The Haulers contend that, if the PCHA has the power to self-haul, then it fits into one of the three categories of "solid waste collection companies" that are regulated by the WUTC under RCW 81.77.[14]

The term "solid waste collection company" is defined in RCW 81.77.010(7) as a "person . . . operating or managing vehicles used in the business of transporting solid waste for collection and/or disposal for compensation." The Washington Administrative Code states that the phrase "the business of transporting solid waste for collec-

---

[12]RCW 35.82.020(9).

[13]*Port of Seattle v. Washington Utils. & Transp. Comm'n,* 92 Wn.2d 789, 794-95, 597 P.2d 383 (1979) (*citing Christie v. Port of Olympia,* 27 Wn.2d 534, 179 P.2d 294 (1947)).

[14]That statute is entitled "Solid Waste Collection Companies."

tion and/or disposal for compensation" applies only to carriers who are *primarily* in the specialized business of transporting solid waste for collection.[15]

The parties agree that the PCHA is not primarily in the specialized business of transporting solid waste. First, it is not engaged in a garbage-hauling "business" because it is prohibited from making a profit. The self-hauling proposed by the PCHA is not a business run for compensation, but an in-house performance of a task required to maintain the Housing Authority's own facilities, using its own equipment and personnel. Second, garbage collection and/or hauling is "incidental" to its primary purpose of providing affordable and sanitary low-income housing. We agree with the trial court's conclusion that the Housing Authority is not a "solid waste collection company" subject to RCW 81.77.

Because of this holding, we need not address the PCHA's arguments regarding the "specific reference" requirement of RCW 35.82.070(10), the "trump" provision of 35.82.910, or laches. We also find meritless the Haulers's argument that the PCHA failed to exhaust its administrative remedies; by serving the Housing Authority with a summons and complaint and by admitting the Superior Court's jurisdiction in the declaratory judgment action, the Haulers waived their right to raise this issue.

We affirm.

HOUGHTON, A.C.J., and MORGAN, J., concur.

Review denied at 131 Wn.2d 1012 (1997).

---

[15]WAC 480-70-050(7).